United States District Court
Southern District of Texas
**ENTERED**
March 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HECTOR J. GONZALEZ, | § | |
|    Plaintiff, | § | |
| | § | |
| VS. | § | CIV. NO. 7:20-cv-00422 |
| | § | |
| KILOLO KIJAKAZI,[1] | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
|    Defendant. | § | |

## **REPORT & RECOMMENDATION**

Plaintiff, Hector Gonzalez, proceeding *pro se*,[2] initiated this action by filing a Complaint

for review of a Social Security disability pursuant to 42 U.S.C. § 405(g).[3]   (Dkt. No. 1.)   This

case was referred to the undersigned magistrate judge for report and recommendation pursuant to

28 U.S.C. § 636(b).   On November 4, 2021, Defendant filed a Cross Motion for Summary

Judgment (Dkt. No. 17) and Defendant's Brief in Support of Cross-Motion for Summary Judgment

(Dkt. No. 18).   This case is ripe for disposition on the record.

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, replacing Andrew Saul. *See Who is the Current Commissioner of the Social Security Administration?*, Social Security Administration, https://faq.ssa.gov/en-us/Topic/article/KA-02633; *see also* Fed R. Civ. P. 25(d).

[2] A *pro se* petitioner is entitled to a more liberal construction of his filings, as *pro se* pleadings are held to less stringent standards than those drafted by practicing attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Peña v. United States*, 122 F.3d 3, 4 (5th Cir. 1997) ("Because [Plaintiff] is pro se, [the Court will] construe his pleadings liberally."). However, "pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

[3] Plaintiff states his cause of action as being brought pursuant to "Title II (Social Security) Section 205(g) and SSA § 405(g) and title 42 U.S.C.," along with a brief description of the cause, "Title XVI (Supplemental Security Income) § 1631(c)(3) and SSA § 1383(c) and title 42 U.S.C." (Dkt. No. 1-1 (cleaned up).) However, the undersigned determined, based on Plaintiff's pleadings, that Plaintiff is solely bringing an action pursuant to 42 U.S.C. § 405(g).

Liberally construed, Plaintiff claims the Commissioner of the Social Security Administration (SSA) (the "Commissioner") improperly decided he is not disabled under the Social Security Administration's definition and, therefore, Plaintiff qualifies for benefits.[4]   (Dkt. No. 1 at 1.)   Review of the record of the Social Security Administration (SSA) proceedings show that substantial evidence supports the Administrative Law Judge's (ALJ) decision that Plaintiff's severe impairment did not meet an impairment listing, Plaintiff is able to perform "past relevant work," and Plaintiff has a residual functional capacity (RFC) that allows him to do "any other work," as defined by the SSA.   Thus, as will be discussed in greater detail, Plaintiff's claims should be dismissed.

After a careful review of the record and relevant law, the undersigned recommends Defendant's Cross Motion for Summary Judgment (Dkt. No. 17) be **GRANTED**.   In addition, to the extent Docket Number 16 is Plaintiff's motion for summary judgment, it should be **DENIED**. It is further recommended that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** with prejudice, and the case be closed.

## HISTORY OF INJURY

Plaintiff was a diesel mechanic for Pharr San Juan Alamo (PSJA) Independent School District for approximately ten years.   (Dkt. No. 13-10 at 7.)[5]   That position involves continuous

---

[4] Plaintiff was provided an opportunity to appropriately set out his claims utilizing a standardized form entitled "Complaint for Review of Social Security Disability or Supplemental Security Income Decision." (Dkt. Nos. 3, 4.)   With the form submitted, Plaintiff sets out that he contests the ALJ's decision based on legal error.   (Dkt. No. 5 at 3.)   Plaintiff does not further explain in detail the legal error, however, based on a review of Plaintiff's provided exhibits, it appears that he is contesting the noted claims.   *Cf. United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) (noting *pro se* litigants are still required to explain and identify specific facts in support of their claims); *see also Bookman v. Shubzda*, 945 F. Supp. 999, 1004–05 (N.D. Tex. 1996) (discussing a *pro se* litigant's obligation to support his claims).   Considering Plaintiff's *pro se* status, he is provided the benefit of the doubt as to his filings in this matter.

[5] Dkt. No. 13-10 at 5–19 is an examination report dated June 19, 2018, from Lida Dahm, M.D., and conducted at the request of the Texas Department of Insurance – Division of Workers' Compensation.

standing, sitting, walking, bending, and frequent squatting, twisting, pushing, pulling, and kneeling. *Id.* Plaintiff's injury initially occurred on August 3, 2017. *Id.* Plaintiff and a co-worker were backing a trailer to hook it to a truck hinge at the back of the truck. *Id.* When the Plaintiff and the co-worker lost control of the trailer on the sloping driveway, Plaintiff was hit and pushed in-between the metal pieces. *Id.* When it appeared that the trailer was going to hit him in his groin area, Plaintiff twisted to reduce the impact and the corner of the metal trailer hit the inner portion of his right thigh and his hand. *Id.* Plaintiff also twisted his back in this process. (Dkt. No. 13-10 at 7.) Plaintiff returned to work three weeks after this injury, but only to light duty. *Id.* Plaintiff could not return earlier due to his cellulitis in his right hand. *Id.*

Plaintiff then had a second injury on November 1, 2017. *Id.* This second injury was ultimately viewed as an *extension* of the primary injury by both the insurance carrier and the Texas Department of Insurance - Division of Workers' Compensation, apparently after a significant amount of time analyzing the issue. *Id.* On November 1, 2017, Plaintiff attempted to remove water pump bolts that were frozen to the engine block. *Id.* Plaintiff struggled to remove them, so he turned and twisted his body to try to get the large and heavy bolts loosened. (Dkt. No. 13-10 at 7.) During this attempt, Plaintiff felt a burning sensation and pop in his lower back. *Id.* Plaintiff was sent home and woke up stiff the next day and "could not walk." *Id.* However, it appears Plaintiff was able to return to work, yet was immediately sent home to see his local physician. *Id.*

In the June 19, 2018 examination performed by Lida Dahm, M.D., the accepted conditions listed were right hand cellulitis, right thigh sprain or strain (when the diagnosis really was a

---

Plaintiff submitted the examination at the ALJ proceedings.  The document was marked and admitted as Exhibit 3F for the purpose of said proceedings.

contusion), and a lumbar sprain/strain.  *Id.*  The disputed conditions included degeneration and dehydration of the L5-S1 level of the spine with disc protrusion and herniated nucleus pulposus L5-S1 with lumbosacral radiculopathy.  *Id.* at 14.

On or about October 30, 2017, Plaintiff was shown to be at maximum medical improvement (MMI).  (Dkt. No. 13-10 at 13.)  Plaintiff requested and was given permission to go from light to full duty; unfortunately, as noted, he injured himself again November 1, 2017. *Id.*  According to Dr. Dahm's report, the injury in November aggravated the previous degenerative L5-S1 disc disease injury.  *Id.* at 16; *see also* Dkt. No. 13-10 at 88-89 (Letter dated Nov. 2, 2018, from Dr. Dahm explaining that the incident from August 3, 2017, based on review of MRI dated September 22, 2017, "did cause an aggravation of the injuries [(herniated disc protrusion)] in question.").[6]

As of December 11, 2018, the claimant's lower back pain persisted, with pain of "six-to-seven" out of ten on the pain scale.  (Dkt. No. 13-10 at 67.)[7]  "Previous treatment included physical therapy, epidural steroid injection, gabapentin, cyclobenzaprine, and naproxen."  *Id.* "An MRI of the lumbar spine without contrast performed on June 22, 2018, revealed L5-S1 disc protrusion/herniation that impinges on the thecal sac and the descending S1 nerve root bilaterally." *Id.*  Importantly, "there [was] no evidence of weakness in the lower extremities in an S1 nerve root distribution as required by the guidelines."[8]  *Id.*

---

[6] Said letter was submitted by Plaintiff as part of Exhibit 5F for the ALJ proceedings.

[7] Dkt. No. 13-10 at 65 to 69 is an Adverse Determination letter from The Texas Association of School Boards Risk Management Fund dated Dec. 27, 2018 in response to Plaintiff's request for medical services. The physician examiner declined a recommendation for surgery as for the spinal injury by Dr. Jose G. Dones-Vasquez and within the declination was the noted medical review of Plaintiff's condition.  Plaintiff submitted the document as part of Exhibit 5F during the ALJ hearing.

[8] "Guidelines" in this report were in reference to Official Disability Guidelines and, based on those guidelines and the examiner's medical judgment, a recommendation of no surgery was made by the

Plaintiff was not on any medications at the time of his December examination due to adverse side effects of the recommended medication.   (Dkt. No. 13-10 at 11.)   As for treatment, Plaintiff had physical therapy and IM (intramuscular) injections.   *Id.*

### i.   Administrative Proceedings

On April 21, 2020, there was a hearing with the Plaintiff before the ALJ.   The Plaintiff, as noted, suffered from a disc herniation during his job as a diesel mechanic.   (Dkt. No. 13-3 at 34.)   Mr. Gonzalez argued that although he has had improvement in the actual area relating to the disc herniation, there has not been improvement regarding the level of pain Mr. Gonzalez suffers. *Id.*   Mr. Gonzalez alleged he is unable to do "even a full, wide range of sedentary employment." *Id.*   Plaintiff pointed to three exhibits on the record: 1F, 2F, and 7F.   *Id.* at 35.   Exhibit 1F is an MRI from September 22, 2017, that shows Plaintiff's diagnosis of a 5.5 mm disc protrusion.   (Dkt. No. 13-10 at 2-3.)   Exhibit 2F is an MRI from June 22, 2018, wherein the diagnosis showed the 5.5 mm disc protrusion had shrunk to a 2.4 mm disc protrusion.   *Id.* at 4.   Exhibit 7F is a series of workers' compensation evaluations from July 2018 to April 2019, demonstrating, according to Plaintiff's Counsel,[9] Plaintiff was dealing with radiating pain.   (Dkt. No. 13-11 at 2-72.)[10]   Mr. Gonzalez requested the ALJ find him disabled.   (Dkt. No. 13-3 at 63.)

---

examiner.   *See* Dkt. No. 13-10 at 67–68.

[9] Plaintiff was represented by Elizabeth Gordon, an attorney for The Advocator Group, in the proceedings before the ALJ.   (Dkt. No. 13-3 at 29, 34.)   The ALJ opinion references that claimant was represented by Kenneth Pilla, a non-attorney representative; however, the decision was carbon copied to Ms. Gordon at the Advocator Group and the ALJ hearing transcript notes an appearance by Ms. Gordon.   (Dkt. No. 13-3 at 9, 10, 32.)

[10] In each evaluation, Plaintiff usually described the pain level in his lower back at either a seven or eight on a scale of one to ten, in addition to complaints of pain radiating down to his lower extremities.   *See generally* Dkt. No. 13-11 at 2–73 (Exhibit 7F).

Among Plaintiff's physical ailments, are emotional ones. *Id.* at 37. Plaintiff has four children and is in the process of divorcing his wife, the mother of said children. *Id.* Additionally, his mother-in-law is suing him for $90,000 for repayment of a loan she gave to him and her daughter (his soon-to-be ex-wife) to build a new house after Plaintiff's old house burned down. *Id.* at 52. Plaintiff is now living with his mother since his wife kicked him out of the house. *Id.* at 53. Plaintiff currently has custody of his children every other week. *Id.* In addition to being sued by his mother-in-law, he is going through a wrongful termination suit with the school district. (Dkt. No. 13-3 at 56.) According to Plaintiff, the wrongful termination suit is why he will not get hired as a teacher. *Id.* In addition, Plaintiff is not completing any online schoolwork because he is unsure how to finance his education since he has already paid $34,000 for his degree from Universal Technical Institute. *Id.* at 58.

Also, Plaintiff asserts his limited income is through a supplemental insurance program set-up through his job with the school district in which he would pay for insurance in case of injury on the job. (Dkt. No. 13-3 at 51.) At the time of the hearing, Plaintiff's supplemental insurance contract had been renewed for another six months. *Id.* at 54. It was Plaintiff's idea to apply for Social Security benefits because he would like additional help with his medical situation. *Id.*

### ii.  **Work History**

The last time Plaintiff worked was in April of 2018 as a diesel mechanic. (Dkt. No. 13-3 at 38.) Plaintiff had been a diesel mechanic for eleven years. *Id.* at 39. After getting "pinched in between a generator and a truck," Plaintiff suffered an injury which is preventing him from "bending down, crouching, [and] kneeling." *Id.* at 39-40. Plaintiff was terminated from his job in April of 2018 after his back injuries and while he was on workers' compensation. *Id.* at 38.

Since being terminated in 2018,[11] he has not looked for any other kind of work.   *Id.* at 38, 51. Plaintiff has not put together a resume or looked around at all, because he has been "in and out of doctor's nonstop" and his wife "decided to leave [him]."   *Id.*

Plaintiff has never given any thought to pursuing an alternate career because he is preoccupied with his divorce, his physical back pain, taking care of his kids, and trying to determine his future.   (Dkt. No. 13-3 at 55.)   Plaintiff has decided, however, that he is not going back to heavy work.   *Id.* at 56.

When Plaintiff has a bowel movement, his legs go numb.   *Id.* at 40.   Plaintiff's energy is poor and he has difficulty sleeping because he is tossing and turning from the back pain.   *Id.* Plaintiff must also lie down three to four times a day.   *Id.* at 41.   According to Plaintiff, his doctors said this fatigue is normal given the side effects of the medication he is on.   *Id.*   The side effects include "light-headed and dizziness, nause[a], [and] makes you spaced out like a zombie." (Dkt. No. 13-3 at 42.)

### iii. Daily Pain

Plaintiff's typical daily pain, on a scale of one to ten—ten being "so bad that [he] has to go to the hospital and zero being no pain"—a typical pain level is "around eight" without medication and "five" with medication.   (Dkt. No. 13-3 at 43.)   Plaintiff must be alternating between sitting down or on his side or standing every 30 minutes.   *Id.*   Apparently, Plaintiff experiences "numbness, tingling, [and a] burning sensation" that is "constantly there" in his legs.   *Id.* at 44. Plaintiff's range of motion, including movements such as bending, kneeling, and squatting, cause greater pain for Plaintiff.   *Id.*   Plaintiff has a back brace belt that helps to keep his posture straight

---

[11] Plaintiff states his injury was in 2017 and he was terminated in 2018, though he seems to have confused these facts at the hearing.   *Cf.* Dkt. No. 13-3 at 38 *with* Dkt. No. 13-3 at 50–51.   Despite Plaintiff's confusion about the timeline at the hearing, the record supports Plaintiff was injured on November 1, 2017 and terminated in April of 2018.   *See* Dkt. No. 13-10 at 7; Dkt. No. 13-3 at 38.

and it "keeps the pressure off of [his] spine. *Id.* Plaintiff also has issues with his arms and hands, which experience a "tingly sensation." *Id.* at 45. According to Plaintiff, his left side is worse than his right, as he experiences muscle spasms and weakness on the left side of his lower back. (Dkt. No. 13-3 at 45.)

In terms of Plaintiff's focus and concentration, Plaintiff believes it has "changed a lot" because now Plaintiff paces himself throughout the day, stretching and taking longer to do things. *Id.* at 46. Plaintiff can sit for about 15-30 minutes maximum "if [he is] pushing" and after that period of time, he feels a "numb and a burning sensation." *Id.* As for standing, Plaintiff can stand comfortably for between 15-45 minutes, but 45 minutes would be if he was really pushing himself. *Id.* at 47. Plaintiff can only walk between 50-100 feet, after which he would feel exhausted and experience a loss of balance. *Id.* Plaintiff can lift two gallons of milk "if [he is] lucky" and needs his mother's help with activities of daily living such as cooking, cleaning, laundry, and shopping. (Dkt. No. 13-3 at 47.)

#### iv. **Vocational Expert**

The vocational expert, Howard Marnan, said that Plaintiff's skills could transfer to be a lube servicer, which requires medium work, or an assistant manager, which requires light work.[12]

---

[12] The vocational expert also set out during his testimony the listings for each position (diesel mechanic, lube servicer, assistant manager, and security guard) within the *Dictionary of Occupational Titles*. (Dkt. No. 13-3 at 60.) Plaintiff was an assistant manager and security guard prior to being hired as a diesel mechanic. As each listing is within the *Dictionary of Occupational* Titles, each position can be found within the national economy. *See* 20 C.F.R. 404.1566(d)(1); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

SSR, cited in the above paragraph, is in reference to the Social Security Rulings. "Through SSRs, we [the Social Security Administration (SSA)] convey to the public SSA precedential decisions relating to the Federal old age, survivors, disability, supplemental security income, and special veterans' benefits programs." SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The SSA "may base SSRs on determinations or decisions made at all levels of administrative adjudication, Federal court decisions, Commissioner's decisions, opinions of the Office of General Counsel, or other interpretations of the law and regulations." *Id.* Although SSRs do not have the same force and effect as statutes or regulations,

(Dkt. No. 13-3 at 61.)  The vocational expert would not transfer him to be a teacher because Plaintiff lacks the qualifications for that job.  *Id.*  Upon Plaintiff's Counsel's questioning, the vocational expert noted that generally being off task more than ten percent means that you are doing less than the minimum production and although absences once a month are generally tolerated at sporadic times of employment, if these absences last after five to seven months, then the employer will see the absences as habitual, and the person will likely lose their job.  *Id.* at 62–63.

## SUMMARY OF THE PLEADINGS

On May 28, 2020, the ALJ determined Plaintiff was not disabled.  (Dkt. No. 13-3 at 7–19.)  The ALJ followed the five-step sequential evaluation process.[13]  At step one, the ALJ found

---

they are binding on all components of the Social Security Administration.  *Id.* (citing 20 C.F.R. § 402.35(b)(1)); *see also Sullivan v. Zebley,* 493 U.S. 521, 530 n.9 (1990).

[13] The five-step process is as follows:

(1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Zimmerman v. Astrue,* 288 F. App'x. 931, 933–34 (5th Cir. 2008) (citing *Bowling v. Shalala,* 36 F.3d 431, 435 (5th Cir.1994); 20 C.F.R. § 404.1520(a)–(e) (describing the five steps)).  A finding that an individual is disabled or, alternatively, is not disabled at any step is "conclusive" and ends the review.  *Zimmerman,* 288 F. App'x. at 934 (quoting *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988)).  After step three, there is an assessment of a plaintiff's residual functional capacity (RFC), which is basically an assessment of an individual's ability to work, prior to going to the last two steps.  SSR 96-8p, 1996 WL 374814, at *1 (July 2, 1996).  "This assessment of RFC is used at Step 4 ... to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age, education, and work experience."  *Id.* at *2.  As will be established, substantial evidence supported the ALJ's RFC finding and the ALJ's finding that Plaintiff was not disabled as defined under the Social Security Act.

Plaintiff had not engaged in substantial gainful activity since April 19, 2018, the alleged onset date of Plaintiff's disability.[14]   *Id.* at 12.   At step two, the ALJ found Plaintiff's disorder of the lumbar spine was a severe impairment.   *Id.*   At step three, the ALJ found Plaintiff's impairment failed to meet or equal a listed impairment for presumptive disability under the regulations.   *Id.* at 12–13. Prior to the last two steps, the ALJ found Plaintiff's residual functional capacity (RFC) included the ability to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).   *Id.* at 13.   Light work includes lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to ten pounds.   20 C.F.R. § 404.1567(b).   Then, at step four, the ALJ found Plaintiff could perform his past relevant work as an assistant manager and security guard, both jobs within the national economy, despite the physical limitation from his back injury. (Dkt. No. 13-3 at 17–18.)   At this point, the ALJ set out "alternative findings for step five of the sequential evaluation process."   *Id.* at 19.   "Based on a residual functional capacity for the full range of light work, considering the claimant's age [35 at time of alleged disability], education [at a minimum high school education], and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.21."   *Id.* at 19.   Consequently, the ALJ found Plaintiff is not under a "disability" as defined by the Social Security Act under both Step 4 and Step 5 of the evaluation process.   *Id.*

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on November 4, 2020.   (Dkt. No. 13-3 at 3–7.)   Plaintiff

---

[14] Although the ALJ states April 19, 2018, is the alleged onset date of disability due to loss of employment, Plaintiff attempted to clarify at the hearing that the continuation of his first injury that occurred on November 1, 2017 was when he became disabled.   (Dkt. No. 13-10 at 7.)   April of 2018 is when Plaintiff stopped working and, for purposes of the benefits determination, is the effective date that Plaintiff has been unable to work due to his back injury.   *See* Dkt. No. 13-3 at 38; *see also* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

then filed this action pursuant to 42 U.S.C. § 405(g).  (Dkt. No. 1.)  On August 20, 2021,

Defendant filed an answer to Plaintiff's Complaint.  (Dkt. No. 12.)  On September 22, 2021,

Plaintiff filed additional documents in support of his claim that Defendant has interpreted as a

motion for summary judgment.[15]  (Dkt. No. 16.)  On November 4, 2021, Defendant filed a Cross

Motion for Summary Judgment (Dkt. No. 17) and Defendant's Brief in Support of Cross-Motion

for Summary Judgment (Dkt. No. 18) arguing there is substantial evidence to support the ALJ's

decision.

## APPLICABLE LAW & ANALYSIS

### I.     Standard of Review

Summary judgment is proper when the record reflects that "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).   Although "[t]he same

standard rules governing summary judgments apply to a review of an administrative denial of

social security benefits," appellate review of social security matters is limited by 42 U.S. §

405(g).[16]  *Alejandro v. Barnhart*, 291 F.Supp.2d 497, 500 (S.D. Tex. 2003) (citations omitted).

Once the movant for summary judgment presents "a properly supported motion for

summary judgment, the burden shifts to the nonmoving party to show with 'significant probative

evidence' that there exists a genuine issue of material fact."  *Hamilton v. Segue Software, Inc.*,

232 F.3d 473, 477 (5th Cir. 2000) (citation omitted).   Further, "[w]hen parties file cross-motions

---

[15] This is an appropriate consideration in light of Plaintiff's *pro se* status.  *See infra* n.2.

[16] For example, although under Federal Rule of Civil Procedure 56 a court can look outside of the pleadings
to depositions, answers to interrogatories, admissions on file, and affidavits for evidence, 42 U.S.C. §
405(g) limits a court's review of a social security matter to the administrative record.  *Lovett v. Schweiker*,
667 F.2d 1, 2 (5th Cir. 1981) ("No evidence external to the administrative record is generally admissible in
reviewing an administrative action pursuant to 42 U.S.C. [§] 405(g).").

for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."[17] *Rangel v. Saul*, No. 5:19-CV-31, 2020 WL 3546875, at *2 (S.D. Tex. Mar. 8, 2020) (citing *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)) (internal quotations omitted)).    And, in considering the cross-motions for summary judgment independently, "the court may enter summary judgment if there are no genuine fact issues, 'and one of the parties is entitled to prevail as a matter of law[.]'" *Krippendorf v. Astrue*, No. 3:16-CV-142, 2017 WL 3311233, at *2 (S.D. Tex. Aug. 1, 2017) (citing *House v. Quarterman*, No. CIV.A. H–07–3248, 2008 WL 896220, at *1 (S.D. Tex. Apr. 2, 2008) (quoting *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004))).

Per 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing.    Review of the Commissioner's decision is limited to whether "(1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 816–17 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (internal quotations and citation omitted); 42 U.S.C. § 405(g).    "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)).    And the threshold for providing sufficient "substantial evidence" is not high. *Id.*    "Substantial evidence

---

[17] Again, the undersigned notes Defendant interpreted the *pro se* Plaintiff's documents submitted on September 22, 2021, as a motion for summary judgment, which the undersigned finds appropriate.  *See infra* n.15.  As such, the undersigned reviewed Docket Number 16 as a motion for summary judgment and Docket Number 17 as labeled-Defendant's Cross Motion for Summary Judgment.

is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Adams v. Bowen*, 833 F.2d 509, 511 (5th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   In other words, review of the Commissioner's final decision is "exceedingly deferential." *Rangel*, 2020 WL 3546875, at *2 (citing *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)).   However, the court must scrutinize the record in applying the substantial evidence standard.   *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).   And in doing so, the court "may neither reweigh the evidence in the record nor substitute [its] judgment for the [ALJ's]." *Id.* (citing *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987)).

"While substantial deference is afforded the Commissioner's factual findings, legal conclusions and claims of procedural error are reviewed *de novo*." *Gorgol v. Berryhill*, No. SA-17-CA-109-HJB, 2017 WL 8181018, at *2 (W.D. Tex. Oct. 18, 2017) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003); *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *4 (5th Cir. Aug. 19, 2005)).

## II.   Substantial Evidence Supports the ALJ's Determination that Plaintiff's Severe Impairment Did Not Meet a Listing[18]

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereafter "App. 1").   *See* Dkt. No. 13-3 at 11; *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.   If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement set out in 20 C.F.R. § 404.1509, then the claimant is disabled.   20 C.F.R. §

---

[18] Plaintiff is not contesting the findings at Steps 1 and 2 of the process that were made in his favor nor is Defendant contesting such findings in the cross motion for summary judgment.

404.1520(a)(4)(iii), (d). If the impairment does not meet a listing, the analysis proceeds to determination of the residual functional capacity. *See* Dkt. No. 13-3 at 11; *see also* 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f).

A claimant's impairment matches a listing when it meets *all* the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* If the claimant's impairment does not match a listing, then the claimant must show that his or her "unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment" by presenting "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.* at 531 (citing 20 C.F.R. § 416.926(a) (1989)).[19] "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (citing 20 C.F.R. § 416.925(a) (1989) (additional citation omitted)). The reason for this standard is to create a presumption of disability such that, upon a determination of disability at step three, an inquiry into step four would be unnecessary. *Id.; see also Bowen v. Yuckert,* 482 U.S. 137, 141 (1987). However, "[a]n impairment or combination of impairments that manifests only some of a listing's criteria, no matter how severely, does not qualify; if a claimant's impairment (or combination of impairments) does not satisfy every component, it does not meet the listing." *McCullough v. Berryhill*, 2019 WL 1431124, at *5 (W.D. Tex. Mar. 29, 2019) (citing 20 C.F.R. § 404.1525(c)(3)). Indeed, since

---

[19] "The regulations implementing the Title II disability standard, 42 U.S.C. § 423(d), at issue in [*Brown v.*] *Yuckert*, and those implementing the identical Title XVI standard, § 1382c(a)(3), at issue in this case, are the same in all relevant respects." *Zebley*, 493 U.S. 521, 525 n.3 (comparing 20 C.F.R. §§ 404.1520-1530 with §§ 416.920-930 (1989)). Section 404 pertains to disability determinations under title II of the Social Security Act (20 C.F.R. § 404.1501) and § 416 pertains to the provisions of title XVI of the Social Security Act (20 C.F.R. § 416.101).

meeting a listing leads to a determination of being disabled without any further examination, the criteria is both "demanding and stringent." *Id.* (quoting *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).

Listing 1.04, Disorders of the Spine, is the most similar listed impairment to Plaintiff's impairment. App. 1, § 1.04. The ALJ found Plaintiff did not meet the requirements of listing 1.04 because the medical record failed to show evidence of "spinal arachnoiditis; lumbar spinal stenosis resulting in pseudoclaudication; or nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg-raising test, spinal arachnoiditis." (Dkt. No. 13-3 at 13 (citing App. 1, § 1.04A).) "Nor does the evidence establish either spinal arachnoiditis . . . resulting in the claimant's need to change position or posture more than once every two hours (App. 1, § 1.04B) or lumbar spinal stenosis resulting in pseudoclaudication . . . [an] inability to ambulate effectively (App. 1, § 1.04C)." *Id.* at 12. In other words, although Plaintiff met some of the criteria of the "Disorders of the Spine" listing, he did not satisfy all of the criteria. *Id.* at 12–13. The ALJ's decision was based on the medical records provided. *See id.*

The medical records presented establish that Plaintiff has a significant back injury. Plaintiff's Counsel at the hearing addressed medical records provided in support of his disability claim, including the various examinations for purposes of workers' compensation where Plaintiff always complained of pain in his lower back and extremities in support of a disability finding. *See* Dkt. No. 13-3 at 35; *see also* Dkt. No. 13-11 at 2–72 (Exhibit 7F). But, besides those records, the ALJ also reviewed the examination performed by Marisa C. Inigo, M.D., a consultative internal

medicine examiner, on March 20, 2019.  *See* Dkt. No. 13-10 at 97–105 (Exhibit 6F).   Of

importance, Dr. Inigo concluded the following:

> Based on the current examination, the claimant's ability to sit, stand and move is
> unrestricted.  He is able to lift, carry, and handle objects.  He hears and speaks
> well.   There is no evidence of joint deformities, bone or tissue destruction.   He is
> able to heel, toe, and tandem walk.   There is normal grip strength bilaterally.   His
> ability to reach, handle, finger, and feel is unrestricted. On examination, the
> claimant shows no evidence of muscle wasting or fatigue.

(Dkt. No. 13-10 at 102.)   Further, Plaintiff had full range of joint motion.  *Id.* at 104–05.   These

medical findings support the ALJ's determination that Plaintiff's severe impairment did not meet

or equal a listing, even considering listing 1.04, Disorders of the Spine.   Despite having the noted

injury, substantial evidence has been set out that Plaintiff is still mobile and agile and does not

exhibit the physical characteristics of someone who cannot walk or stand on a consistent basis due

to such injuries.   *Cf.* App. 1, § 1.04A (noting evidence of nerve root compression will be

characterized by limitation of motion of the spine and motor loss ("atrophy with associated muscle

weakness or muscle weakness") accompanied by sensory or reflex loss and positive straight-leg

raising test); App. 1, § 1.04B (requiring spinal arachnoiditis to be confirmed by appropriate reports

or tests and resulting in a need for change of posture more than once every two hours); and App.

1, § 1.04C (noting that impairment must result in inability to "ambulate effectively, as defined in

1.00B2b.").[20]

Overall, for the noted reasons, substantial evidence supports the ALJ's finding that

Plaintiff's severe impairment did not meet or equal a listing.

---

[20] "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a
sufficient distance to be able to carry out activities of daily living.   They must have the ability to travel
without companion assistance to and from a place of employment or school."   App. 1, § 1.00B2b2.

### III.  **Substantial Evidence Supports the ALJ's RFC Determination**

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.  20 C.F.R. §§ 404.1520(e), 404.1545; SSR 96-8p, 1996 WL 374184 (July 2, 1996).

An individual's residual functional capacity is "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  *Irby v. Barnhart*, 180 F. App'x. 491, 493 (5th Cir. 2006) (citing SSR 96–8p, 1996 WL 374184 (July 2, 1996)).  When determining the RFC, an ALJ considers descriptions provided by physicians and the claimant, alongside the claimant's overall credibility. *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988).  If an ALJ's decision expressly states that it was made "[a]fter careful consideration of all the evidence," and there is no reason or evidence to dispute his assertion, then the Fifth Circuit will not disturb the ALJ's conclusions.  *Brunson v. Astrue*, 387 F. App'x. 459, 461 (5th Cir. 2010).

In addition, any conflicts between the claimant's testimony and the medical records are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).  Even if the court determines the evidence "preponderates in [the claimant's] favor," a court must still affirm the Commissioner's findings if there is substantial evidence to support these findings.  *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton*, 697 F.2d at 592; *Olson v. Schweiker*, 663 F.2d 593, 595 (5th Cir. 1981)).

The ALJ found Plaintiff retained the ability to perform the full range of light work.  (Dkt.

No. 13-3 at 13–17.)  In support of this finding, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p" and considered opinion evidence pursuant to the requirements of 20 C.F.R. § 404.1520(c). *Id.* at 13.  As set forth below, the testimonial and medical evidence is consistent with the ALJ's determination.

### A. The ALJ's Reliance on Evidence from the Hearing

The ALJ first noted Plaintiff's activities of daily living are not entirely consistent with a disabling level of functional impairment.  (Dkt. No. 13-3 at 14.)  Plaintiff testified he has a valid driver's license and drives to perform tasks such as shopping at the supermarket on Sundays.  *Id.* Plaintiff performs typical parenting duties, with some assistance from his mother.  *Id.*  And, during a March 2019 consultative medical examination, the claimant reported doing light housework, going to the grocery store, doing laundry, and performing exercises at home.  *Id.* (citing Dkt. No. 13-10 at 99 (Exhibit 6F)).  Further, the ALJ notes Plaintiff did not "rule out the ability to bathe, dress, shave, and feed himself."  (Dkt. No. 13-3 at 14.)  Plaintiff stated he can prepare his own meals and perform certain housework and yardwork, even if it is at a slow pace due to his impairment.  *Id.*  Plaintiff said he leaves his residence either by walking or riding in an automobile to perform tasks including grocery shopping and playing with his four children.  *Id.* Plaintiff acknowledged he can follow written and spoken instructions if his pain did not interfere. *Id.*  Plaintiff also reported handling stress and routine changes well.  *Id.*  And finally, Plaintiff cited an excellent ability to get along with authority figures, denying ever getting fired or laid off from a job due to issues of getting along with others.  *Id.* at 14 (citing Dkt. No. 13-8 at 27–32 (Exhibit 4E)).

**B. The ALJ's Evidence from the Medical Record**

The ALJ concluded the time-relevant medical evidence is also inconsistent with Plaintiff's allegation of disability. (Dkt. No. 13-3 at 14.) The ALJ asserted that although Plaintiff does have a severe impairment that could produce varying symptoms, "the medical evidence, particularly with respect to the duration, frequency, intensity, and other information regarding [Plaintiff's] symptoms, fails to substantiate limitations to the degree that the claimant asserts or to document a level of functional restriction incompatible with sustained work activity." *Id.*

The ALJ noted each of Plaintiff's injuries, including the right-hand contusion and cellulitis, right-thigh contusion, and lumbar strain and S1 disc protrusion/herniation, while also noting that "examination findings were negative for straight-leg testing and atrophy of the lower extremities . . . further showed normal . . . range-of-motion and normal motor and sensory functioning." *Id.* at 15. The ALJ asserted he did not defer to or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources, nor addressed evidence that was inherently neither valuable nor persuasive. (Dkt. No. 13-3 at 17 (citing 20 C.F.R. § 404.1520b(c)).)

The medical evidence that the ALJ did consider is the March 20, 2019 opinion of Dr. Inigo. *Id.* at 17. As noted, according to Dr. Inigo, Plaintiff had "unrestricted" ability to sit, stand, and move about and could also lift, carry, handle objects, and perform heel, toe, and tandem walking. *Id.* (citing Dkt. No. 13-10 at 102 (Exhibit 6F)). Dr. Inigo also added that Plaintiff had normal grip strength; unrestricted ability to finger, handle, and feel; and no evidence of joint deformities, bone or tissue destruction, or muscle wasting or fatigue. *Id.* The ALJ found the opinion to be "well supported by Dr. Inigo's objective findings on examination and to be consistent with and supported by other objective medical findings," such that he found Dr. Inigo's opinion to be persuasive.

(Dkt. No. 13-3 at 17.)

Dr. Inigo described Plaintiff's back issue by stating that there was some disc degeneration

and disc protrusion, however, "more likely than not [it is] a muscle strain." (Dkt. No. 13-10 at

102 (Exhibit 6F).) Dr. Inigo stated, "[C]laimant has had an improvement of his herniated disc,

which has shrunk from 5.5 [mm] to 2.4 [mm]. Physical examination was normal." *Id.* And

despite Plaintiff's back issue, according to the range of joint motion evaluation chart, Plaintiff

exhibited a full range of movement in his extremities. *See id.* at 103–04.

Additionally, regarding the medical opinions for purposes of Texas Workers'

Compensation,[21] the ALJ found these unpersuasive. (Dkt. No. 13-3 at 17.) Whether a claimant

is able to work is an issue reserved solely to the Commissioner for determination. POMS[22] DI

24503.040(A); *see also* 20 C.F.R. § 404.1520c(a); *Giles v. Astrue*, 433 F. App'x. 241, 247 (5th

Cir. 2011) (citing SSR 96–5p[23], Titles II and XVI: Medical Source Opinions on Issues Reserved to

the Commissioner, 61 Fed. Reg. 34,471, 34,473 (July 2, 1996)). And a key distinction between

---

[21] The examinations conducted for workers' compensation provided by Plaintiff were dated as follows: July 31, 2018 (Dkt. No. 13-11 at 7–11 (Exhibit 7F at 6–10)), August 13, 2018 (Dkt. No. 13-11 at 12–16 (Exhibit 7F at 11–15)), September 6, 2018 (Dkt. No. 13-11 at 26–29 (Exhibit 7F at 25–28)), October 9, 2018 (Dkt. No. 13-11 at 34–37 (Exhibit 7F at 33–36)), October 29, 2018 (Dkt. No. 13-11 at 38–41 (Exhibit 7F at 37–40)), November 19, 2018 (Dkt. No. 13-11 at 42–45 (Exhibit 7F at 41–44)), December 12, 2018 (Dkt. No. 13-11 at 46–49 (Exhibit 7F at 45–48)), January 9, 2019 (Dkt. No. 13-11 at 50–53 (Exhibit 7F at 49–52)), February 12, 2019 (Dkt. No. 13-11 at 57–60 (Exhibit 7F at 56–59)), March 5, 2019 (Dkt. No. 13-11 at 61–64 (Exhibit 7F at 60–63)), March 26, 2019 (Dkt. No. 13-11 at 65–68 (Exhibit 7F at 64–67)), April 23, 2019 (Dkt. No. 13-11 at 69–72 (Exhibit 7F at 68–71)), May 23, 2019 (Dkt. No. 13-11 at 73 (Exhibit 8F), and December 17, 2019 (Dkt. No. 13-12 at 2 (Exhibit 9F)), all executed by Dr. Mario Vasquez-Aguilar. The ALJ did not cite to those medical documents from September 27, 2018 (Dkt. No. 13-11 at 30–33 (Exhibit 7F at 29–32)) and January 30, 2019 (Dkt. No. 13-11 at 54–56 (Exhibit 7F at 53–55)), also executed by Dr. Vasquez-Aguilar and with similar findings as the other examinations cited.

[22] POMS is an acronym for the Program Operations Manual System, which is "a primary source of information used by Social Security employees to process claims for Social Security benefits." *Shoulders v. Berryhill*, No. 2:17-CV-13, 2018 WL 3069204, at *22 n.6 (N.D.W. Va. Jan. 16, 2018), *report and recommendation adopted*, No. 2:17-CV-13, 2018 WL 1419342 (N.D.W. Va. Mar. 22, 2018) (citing *POMS Home*, Social Security, https://secure.ssa.gov/apps10/ (last visited Feb. 16, 2022)).

[23] This ruling can also be found at SSR 96-5p, 1996 WL 374183 (July 2, 1996).

the Workers' Compensation opinions and the opinions the ALJ finds persuasive is that the

Workers' Compensation opinions assessed whether or not Mr. Gonzalez could return to his work

as a diesel mechanic, while the opinions on which the ALJ relies are related to his current health

condition and general ability to work.  *See Charles v. Astrue*, 291 F. App'x. 552, 555 (5th Cir.

2008); *cf.* n.21 documents *with* Dkt. No. 13-10 at 97–105 (Exhibit 6F) (Dr. Inigo's report).

### C. ALJ's consideration of Plaintiff's Claims

Plaintiff's subjective complaints must be corroborated, at least in part, by objective

evidence.  *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (citing *Harrell v. Bowen*,

862 F.2d 471, 481 (5th Cir. 1988)).  "The ALJ is not required to show that the RFC is compatible

with all of claimant's self-reported symptoms, but instead to evaluate that testimony in the context

of objective medical evidence and determine the remaining capacity for work."  *Crista B. v.

Berryhill,* No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019), *report

and recommendation adopted sub nom. Crista B. v. Saul*, No. 1:18-CV-042-C-BP, 2019 WL

2996021 (N.D. Tex. July 9, 2019) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

Further, a plaintiff's daily activities may be used in consideration of the plaintiff's disability status.

*Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995).  For the plaintiff to show the ALJ's

determination is erroneous, "the plaintiff must show that no reasonable person could find support

in the record for the RFC assessed by the ALJ."  *Crista B.*, 2019 WL 2996553 at *4 (citing

*Newton*, 209 F.3d at 452).  It is not enough to show that a mere conflict exists between the

plaintiff's alleged symptoms and the ALJ's RFC determination.  *Id.*

The ALJ concluded that the record does not support Plaintiff's allegation of disability,

citing both what the Plaintiff said during the oral hearing and what is detailed in the time-relevant

medical evidence, each set forth above.  Both individually and taken together, evidence presented

at the hearing and in the medical record supports the ALJ's RFC determination relating to "any other work." Plaintiff did not articulate an argument as to why the ALJ's RFC determination was erroneous and solely asked that the SSA find him disabled. And Plaintiff did not reach his burden of showing no reasonable person could find support in the record for the ALJ's RFC determination.

Accordingly, there is no reason or evidence to dispute the ALJ's assertions. And, since there is substantial evidence in the record to support the ALJ's finding that Plaintiff can perform light work—namely, the fact that although Plaintiff does have a back injury, said injury does not prevent him from doing light work—the undersigned affirms the ALJ's RFC determination. *See* 20 C.F.R. § 404.1567(b) (defining "light work" as work that includes lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds).

## IV.   <u>Substantial Evidence Supports the ALJ's Step Four Assessment</u>

Next, the ALJ must determine whether the claimant has the RFC to perform the requirements of his "past relevant work." 20 C.F.R. § 404.1520(f) ("[The ALJ] will compare [the plaintiff's] functional capacity assessment . . . with the physical and mental demands of [his] past relevant work."). "Past relevant work" means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b); *see also* § 404.1565. Under this review, there is no consideration of an applicant's "vocational factors of age, education, and work experience or whether [his or her] past relevant work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(b)(3). If the claimant's RFC demonstrates he can perform past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the ALJ proceeds to the fifth and final step of the disability analysis.

Plaintiff's past relevant work includes his positions as an assistant manager and as a security guard.  (Dkt. No. 13-3 at 18.)   The ALJ established that Plaintiff's past work as an assistant manager and security guard was "past relevant work" as it was performed during the years 2006 and 2007 (*see* Dkt. No. 13-8 at 39 (Exhibit 5E)), which was within the past 15 years, the period of time Plaintiff performed the work met the duration requirement for learning to do the "skilled" work, and the earnings record showed substantial gainful activity, with monthly earnings averaging $860 to $900.  (Dkt. No. 13-3 at 18 (citing Exhibit 9D).)   The vocational expert, Howard Marnan, established that both the assistant manager and security guard positions are jobs characterized as light work and are within the national economy.   *Id.*   The ALJ determined that since the Plaintiff can do a full range of "light" exertional work, that, consequently, Plaintiff can perform these two past positions.   *Id.*

The undersigned finds that the ALJ's analysis regarding Plaintiff's RFC and ability to perform his past relevant work was based on a thorough consideration of the appropriate medical evidence and the advice of the vocational expert such that the ALJ's determination should be affirmed.

## V.   <u>Substantial Evidence Supports the ALJ's Alternative Assessment under Step Five</u>[24]

At the last step of the sequential evaluation process, the ALJ must determine whether the claimant is able to do "any other work" considering his residual functional capacity, age, education, and work experience.   20 C.F.R. § 404.1520(g).   If the claimant can do other work, he is not disabled.   *Id.*   If the claimant is not able to do other work and meets the duration requirement, he is disabled.   *Id.*   To support a finding that an individual is not disabled at this

---

[24] With a finding that Plaintiff is not disabled at step four of the five-step sequential evaluation process, the ALJ does not need to go to the next step.   *See* 20 C.F.R. § 404.1520(a)(4).   In the ALJ opinion, step five was noted as an "alternative finding."   (Dkt. No. 13-3 at 19.)

step, the Social Security Administration is responsible for providing evidence showing other work exists in significant numbers in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience.   20 C.F.R. §§ 404.1512(a)(2)(ii), (b)(3), 404.1560(c).[25]   To this end, Medical Vocational Guidelines are utilized to determine if an individual is disabled or not based on jobs in the national economy.   20 C.F.R. § 404.1569; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b) (hereafter "App. 2").

Under the Medical Vocational Guidelines, work is divided into four categories: sedentary work (App. 2, § 201.00), light work (App. 2, § 202.00), medium work (App. 2, § 203.00), and heavy work (or very heavy work) (App. 2, § 204.00), and provide guidance for weighing such factors as age, education, and work experience within the work categories, corresponding with the claimant's RFC.   The existence of jobs in the national economy are reflected in the "Decisions" shown within the table for each classification of work based on information from the Department of Labor, the Census Bureau, and the Social Security Administration.   *See* App. 2, § 200.00(b). "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."   *Id.*   However, if an individual's RFC or other facts (age, education, skill) do not meet a criteria of a rule, "the rules still provide guidance" for a determination of "disability."   *Id.* at § 200.00(d), (e).

The ALJ, utilizing "Table No. 2 – Residual Functional Capacity: Maximum Sustained Work Capability Limited to Light Work as a Result of Severe Medically Determinable Impairment(s)," made a finding that Plaintiff was not disabled per Rule 202.21 for a "younger

---

[25] The burden is on the claimant to establish that he is disabled through the first four steps but on this last, fifth step, "the Commissioner must show that there is other substantial work in the national economy that the claimant can perform."   *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007).

individual" (age 18-49), "high school graduate or more," and previous work experience of being "skilled or semiskilled – skills not transferable."  *See* Dkt No. 13-3 at 9–10; *see also* App. 2, Table No. 2, Rule 202.21.   In other words, since the ALJ made a finding that Plaintiff's RFC was for a "full range of light work," Plaintiff was 35 years old at time of his claim of disability, Plaintiff has, at a minimum, a high school education, and per Table 2, Rule 202.21, it is not relevant that his previous work experience as an assistant manager or as a security guard is applicable (or "transferable")[26] to a job in the national economy classified as "light work," the Plaintiff is not disabled.   Under such a classification system under the Medical Vocational Guidelines, the only disputable ruling would relate to the ALJ's RFC finding for Plaintiff.   As noted above, there was substantial evidence to support said finding.  *See infra* Section III at 17–22.

"When your impairment(s) and related symptoms only impose exertional limitations and your specific vocational profile is listed in a rule contained in appendix 2 of this subpart, we will directly apply that rule to decide whether you are disabled."   20 C.F.R. § 404.1569a(b).   In this matter, the external limitation of Plaintiff's back injury prevented him from being a diesel mechanic but did not prevent him from "light work"; therefore, after making the noted RFC finding, the ALJ then appropriately made the noted alternative finding as mandated under the Medical Vocational Guidelines.  *See also* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983); SSR 83-11, 1983 WL 31252 (Jan. 1, 1983).

---

[26] Within the context of determining disability, "[t]ransferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs.   Transferability is distinct from the usage of skills recently learned in school which may serve as a basis for direct entry into skilled work . . . ."   SSR 82-41, 1982 WL 31389, at *2 (Feb. 26, 1979) ("Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979").   Stated differently, Plaintiff's skill set utilized at his previous vocational work (assistant manager/security guard) is not relevant to whether Plaintiff could obtain a job classified in the national economy as "light work" under Rule 202.21 of the Medical Vocational Guidelines.   *See generally* POMS DI 25001.001(A)(84), (85), 25015.015(A)(3), 25015.0017(A), and 25025.022.

Accordingly, for the noted reasons and in absence of any genuine issue of material fact relating to whether the Commissioner's final decision is supported by substantial evidence, the undersigned recommends Defendant's Cross Motion for Summary Judgment (Dkt. No. 17) be granted and to the extent Docket Number 16 is Plaintiff's motion for summary judgment, it should be denied.   Consequently, the undersigned also recommends Plaintiff's Complaint be dismissed and the case be closed.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law, the undersigned recommends Defendant's Cross Motion for Summary Judgment (Dkt. No. 17) be **GRANTED**.  And to the extent Docket Number 16 is Plaintiff's motion for summary judgment, it should be **DENIED**.  It is further recommended that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** with prejudice, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Plaintiff and Counsel for Defendant.

**DONE** at McAllen, Texas, this 30th day of March, 2022.

Juan F. Alanis
United States Magistrate Judge